FILED
2007 Jun-19  PM 04:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

2007 JUN 19 PH 2:05

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MOORE; | ) | |
| RONALD P. GENTRY; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. : |
| | ) | |
| ICANN ENTERPRISES, INC.; | ) | |
| ENOM, INC. and REGISTERFLY. COM | ) | CV-07-P-1153-W |
| INC.; | ) | |
| | ) | |
| Defendants. | ) | |

# **COMPLAINT**

## **Jurisdiction and Venue**

1.     This Court has jurisdiction over this matter pursuant to Sections 1, 2 and 4 of the Sherman Act, 15 U. S. C. 1, 2 and 4; 28 U. S. C. 1331; 28 U. S. C. 1331; 28 U. S. C. 1337; 18 U. S. C. § 1964(c); 18 U. S. C. § 1962(c) and 18 U. S. C. § 1962(d).

2.     This Court also has jurisdiction because complete diversity of citizenship exists among the parties, because the Plaintiffs are not citizens of any state of which the Defendants are a citizen and, the amount in controversy in this action exceeds $75,000.00, exclusive of interest and cost.

1

3.      Because the amount in controversy exceeds $75,000.00 exclusive of interest and cost and there is complete diversity of citizenship between the parties, this is a civil action over which the United States District Court has original jurisdiction under 27 U. S. C. § 1332(a).

4.      Each of the Defendants engage in conduct that involve interstate commerce and commerce in the State of Alabama.

5.      Defendant ICANN Enterprises, Inc., the Internet Corporation for Assigned Names and Numbers, enters into contracts with entities in numerous states. The services that Defendant ICANN Enterprises, Inc. authorizes in these contracts are to be performed in every state, including the State of Alabama, and many countries.

6.      Defendant   ICANN   Enterprises,   Inc.   has   entered   into   contracts with RegisterFly.com, Inc. and eNom, Inc. Both RegisterFly.com, Inc. and eNom, Inc. accept credit cards from many jurisdictions and deliver services in many jurisdictions, including the State of Alabama.

7.       RegisterFly.com, Inc. and eNom, Inc. contract with entities in the state of Alabama for which they deliver services in the state of Alabama. RegisterFly.com, Inc. and eNom, Inc. accept credit cards for the purchase of services, some of which involve banking in the state of Alabama.

8.      Here, RegisterFly.com, Inc. and eNom, Inc. took action that caused computer systems in the State of Alabama to not operate as desired. The actions of both RegisterFly.com, Inc. and eNom, Inc.  caused the visitors to these web sites in the state of Alabama to be directed to other websites.

9.      Defendant ICANN Enterprises, Inc., acts under authority due to a contract with the Federal Government.   This contract affects interstate commerce.   Defendant ICANN

2

Enterprises, Inc. enters into contracts with many entities in many states to deliver services and, these services are delivered in the State of Alabama as well as other states. Defendant ICANN Enterprises, Inc. contracts with RegisterFly.com, Inc. and eNom, Inc. which created the ability of RegisterFly.com, Inc. and eNom, Inc. to engage in the conduct complained herein.

## Parties

10.    Plaintiff, Mike Moore, is over the age of 19 and a resident of the State of Alabama.

11.    Plaintiff, Ronald P. Gentry, is over the age of 19 and a resident of the State of Alabama.

12.    Defendant, RegisterFly.com, Inc. is a corporation with its principal place of business in the State of New Jersey. However, RegisterFly.com, Inc. engages in interstate commerce and does business in the State of Alabama. RegisterFly.com, Inc. is an accredited ICANN registrar. As an accredited ICANN registrar, ResisterFly.com maintains multiple domain servers located in numerous locations, including the State of Alabama.

13.    Defendant, Enom, Inc., is a corporation with its principal place of business in the State of Washington. Enom, Inc. is engaged in interstate commerce and does business in the State of Alabama. Enom, Inc. is an accredited ICANN registrar. As an accredited ICANN registrar, eNom, Inc. maintains domain servers located at numerous locations, including the State of Alabama.

14.    Defendant ICANN Enterprises, Inc., is a corporation with its principal place of business in the State of California. Defendant ICANN Enterprises, Inc. engages in interstate commerce and does business in the State of Alabama. Defendant ICANN Enterprises, Inc.

3

operates under a contract with the United States Department of Commerce in order to privatize the Domain Name System (DNS), the addressing system on which the Internet depends to deliver and retrieve data.

15.     Wherever it is alleged that a Defendant did anything, it is averred that "Defendant" acted on behalf of all Defendants collectively, unless otherwise stated. In addition, the use of the word "Defendant" shall include Defendant as well as any and all subsidiaries, parent companies, holding companies, associated companies, affiliates or related companies of any Defendant, and any and all officers, directors, employees, shareholders, agents, experts, consultants or representatives of any Defendant and/or its subsidiaries, parent companies, holding companies, associated companies, related companies, and affiliates including those with either direct or indirect or constructive ownership or in which such persons have common control and/or can assert influence.

## Facts Regarding The Plaintiffs' Claims Under Sections 1,2 And 4 of The Sherman Act

16.     The Internet Domain Name System (DNS) is an addressing system that facilitates Internet communication. In fact, internet communication is dependent upon the DNS. The DNS is a hierarchical system where the principal name server is the Legacy A Root, which sets the standard for the DNS from which every other root synchronizes their data. There are twelve identical copies of the A Root, which are referred to as the secondary legacy roots. Below these secondary roots, there are the Top Level Domains or TLDs. The TLDs are labeled according to function such as military, .mil and government, .gov. The TLDs are divided into three types. The generic TLD is by far the most commonly used and widely known of the TLDs.    A few examples of the generic TLDs are: .com; .net; .mil, and .gov.

4

17.     Because of the DNS, users who type a domain name into their computer are able
to send a message to or view web pages created by, the party who "owns" that domain name
only because there is a database somewhere that links domain names to the unique identifying
numbers that the Internet needs to route data properly.  These services were originally performed
under U.S. Government contract by  Internet Assigned Numbers Authority (IANA) and other
entities.

18 .     Today, this service is performed by Defendant ICANN Enterprises, Inc.  ICANN
is an internationally organized, non-profit corporation that has responsibility for Internet
Protocol (IP) address space allocation, protocol identifier assignment, generic (gTLD) and
country code (ccTLD) Top Level Domain name system management and root server system
management functions.

19.     ICANN possesses monopoly power in the market for entry onto the Legacy A
root server as well as the secondary legacy roots. This monopolistic control has led to higher fees
for Plaintiffs and others to register Internet Domain Naming.  In order to protect this monopoly
against potential competitive threats, ICANN has engaged in a series of anti-competitive
activities.

20.     Part of  ICANN's responsibility is to authorize entities to be an accredited
Internet name domain registry.  In order to carry out this responsibility with respect to the .com
generic TLD, ICANN entered into a contract with VeriSign, Inc. that gave VeriSign, Inc. a
monopoly for registering domain names on the .com generic TLD. **According to one of the
provisions in the .com Registry Agreement, VeriSign, Inc. was not to "unreasonably
restrain trade."** However, if VeriSign, Inc. wanted to be the registry operator for the .com
generic TLD,  ICANN forced them to require a Uniform Dispute Resolution Policy as a

5

prerequisit of becoming a registrar. ICANN also required VeriSign, Inc. to make its domain name registrants enter into a Domain Transfer Agreement. According to another term in the contract, VeriSign, Inc. required those who wanted to register domain names on the .com generic TLD agree that their registration was subject to all of ICANN's current and future policies and specifications even though those future policies and specifications had not been determined. By forcing these contractual provisions upon those who wanted to register names on the .com generic TLD, ICANN stymied non-price competition among the various accredited Internet domain registrars, which forced Plaintiffs to pay higher fees to register the 109 domain names.

21. In order to authorize entities to be an accredited Internet name registry for the remaining generic TLDs, ICANN entered into a series of contracts with a registry for each of the generic TLDs. As part of the contract with each and every gTLD registry, ICANN required the registry to force those who have registered domain names with them to agree to participate in the Uniform Dispute Resolution Policy. ICANN also required the registrars to make its domain name registrants agree to a Domain Transfer Agreement. Another provision in the domain name registration agreement made the registrants agree that registration was subject to all of ICANN's current and future policies and specifications. By forcing these contractual provisions upon those who wanted to register names on the remaining generic TLDs, ICANN stymied non-price competition among the various accredited Internet domain registrars, which forced Plaintiffs to pay higher fees to register their 109 domain names.

22. The registry of each generic TLD entered into contracts with companies such as RegisterFly.com, Inc., eNom, Inc. and others to act as accredited Internet name domain registrars.

6

23. As an ICANN accredited Internet names domain registrar, eNom, Inc. entered into a agreement with RegisterFly.com, Inc. which allowed and/or permitted RegisterFly.com, Inc. to act as a reseller of Internet names that would be registered through eNom, Inc. Thus, when RegistarFly.com, Inc. sold Internet names to Michael Moore, RegisterFly.com, Inc. was not acting as an accredited Internet name registrar, but as a reseller for eNom, Inc.

24. The RegisterFly.com, Inc. web site stated in many places that it was an ICANN accredited Registrar. None of the information on the website stated or asserted that the Internet names registered at the RegisterFly.com, Inc. were not actually registered through RegisterFly.com, Inc., but were actually registered through eNom, Inc. The Defendants suppressed this information from the Plaintiffs.

25. In consideration for the services and products that were provided, accredited Internet name registrars such as RegisterFly.com, Inc. and eNom, Inc. were allowed to charge domain name registrants a fee. Also, if a domain name registrant wanted to register a domain name with the registrar, the registrant had to agree to pay a separate fee for certain administrative tasks that are outside the scope of the regular service. Domain name registrants were not allowed to register a name with the registrar unless it agreed to pay the separate fee for the administrative tasks. By unlawfully tying the administrative tasks to their normal service, the Defendants have engaged in anti-competitive conduct that is aimed at protecting them from potential competitive threats and maintaining their monopoly.

26. The anti-competitive conduct by RegisterFly.com, eNom, Inc. and ICANN coupled with the anti-competitive agreements between them have led to an absence of competition in the domain name registration market. Specifically, the contract each registry enters into with the accredited Internet name registrar requires the registrars to force those

7

individuals who want to register a domain name with the registrar to agree to the Uniform Dispute Resolution Policy. The fact that the registrars are not allowed to register a domain name unless the potential registrant agrees to the Uniform Dispute Resolution Policy stymies non-price competition among the various accredited Internet domain registrars. It also does not function. As such, the Uniform Dispute Resolution Policy would offer no relief to the Plaintiffs and, it would have been useless for Plaintiffs to pursue relief from said policy.

27. There is another aspect of the Uniform Dispute Resolution Policy that hinders competition. Before ICANN adopted its dispute resolution policy, the accredited Internet Domain registrars, came together and drafted a policy that was for the most part adopted by ICANN in its Uniform Dispute Resolution Policy. This type of collusion among the accredited Internet Domain registrars has had the effect of restraining competition among the registrars.

28. There are other anti-competitive provisions in the agreements that ICANN entered into with its registries who, in turn, forced the same provisions on the accredited Internet name registrars, such as Defendant ENOM, Inc. In the agreements, ICANN also requires the registrars to make its domain name registrants agree to a Domain Transfer Agreement. Along with the provision that contains the Uniform Dispute Resolution Policy, this specific provision has had a detrimental effect on non-price competition among the accredited Internet domain registrars. There are other provisions in the contracts that hinder competition among the registrars. In addition to the Uniform Dispute Resolution Policy and a Domain Transfer Agreement, ICANN forces the registrars to make any potential registrant agree that their registration is subject to all of ICANN's current and future policies and specifications. The fact that ICANN forces all the accredited registrars to agree to the aforementioned

8

contractual provisions has led to the virtual nonexistence of non-price competition among the registrars.

29.     In addition to authorizing entities to become accredited Internet name registrars, ICANN has other responsibilities. ICANN determines what Top Level Domains will be made available to users; the policies the new Top Level Domains will have to follow and who will be allowed to offer the Top Level Domains for sale to the public. In carrying out these functions, ICANN has engaged in further anti-competitive conduct that is aimed at protecting its monopoly.

30.     At its second annual meeting in November of 2000, ICANN selected the first new generic TLDs that were to be included in the Legacy A root. In order to be considered as the registry for the new generic TLDs, each applicant had to pay a non-refundable $50,000.00 application fee. The number of generic TLDs selected by ICANN for inclusion on the Legacy A root fell far below even the lowest estimated number of new generic TLDs that the DNS could handle. By limiting the number of new, generic TLDs and by forcing each applicant to pay a non-refundable $50,000.00 application fee, ICANN has prevented competition among the registrars.

31.     Furthermore, the method by which the new, generic TLDs were selected for inclusion on the Legacy A root by ICANN has hindered competition. **In fact, ICANN's application documents as well as its criteria for assessing the new TLD proposals make it clear that the applicants who dealt with ICANN's only competitors, the alternate roots, would be rejected.** By forcing the new, generic TLD applicants to enter into these exclusive dealing arrangements, ICANN has created a substantial barrier to entry on the Legacy A root for

9

its main competition, the alternate roots.  These exclusive dealing arrangements also hinder competition among the accredited Internet domain registrars.

32.     This action does not seek to inhibit ICANN or its registries for each generic TLD from competing on the merits.  This action challenges the concerted attempts of ICANN and its registries to maintain the monopoly in the market for entry onto the Legacy A root server as well as the secondary legacy roots by exclusive dealing contracts, tie-ins, and other anti-competitive agreements that deter innovation, exclude competition and rob customers, such as the Plaintiffs in this case, of their right to choose among competing alternatives.

## FACTS WITH REGARD TO THE REMAINING COUNTS

33.     Here, the Plaintiffs, Michael Moore and Ronald P. Gentry believed they had registered one hundred and nine [109] Internet names with one of the accredited registrars, RegisterFly.com, Inc.   When Plaintiff, Michael Moore, registered the 109 Internet names through RegisterFly.com, Inc., RegisterFly.com did not actually register the names.  In fact, RegisterFly.com, Inc. was acting as a reseller of domain names for eNom.com.  These 109 Internet names were paid for with U.S. currency and renewed with U.S. Currency.  All were the private property of the Plaintiffs.

34.     These Internet names registered by Plaintiffs were directed via IP address to computer, Internet servers, located in Jefferson County, State of Alabama.  These Internet names, (domain) were related to web sites on a server that was connected to the Internet. Internet users were allowed to access web sites that were installed on these servers.  These web sites were related to the Internet names registered by Plaintiffs.

35.     During the course of  business, RegisterFly.com, Inc. placed a number of charges upon a credit card associated with the account of Plaintiffs at RegisterFly.com, Inc.  This credit

10

card was in the name of Plaintiff, Ronald P. Gentry, of Warrior, Alabama. The account at RegisterFly.com, Inc. was opened and is in the name of Plaintiff, Michael Moore, an individual. Plaintiff, Ronald P. Gentry, does not and has never had an account at RegisterFly.com, Inc.

36.     Starting in July of 2005, and continuing until January, 2006, RegisterFly.com, Inc. placed a number of charges on Plaintiff, Ronald P. Gentry's, credit card that were unauthorized and fraudulent.     On several occasions, Plaintiff, Michael Moore, contacted RegisterFly.com, Inc. regarding the improper credit card charges.

37.     During several calls to RegisterFly.com, Inc. in November of 2005, Plaintiff, Michael Moore, stated to personnel at RegisterFly.com, Inc. that it was not authorized to place any more charges on any credit card associated with his accounts. As a result of the phone calls, RegisterFly.com, Inc. was placed on notice that it was not authorized to place any further charges upon any credit card associated with Plaintiff, Michael Moore's, accounts.

38.     On November 28, 2005, in a support ticket at RegisterFly.com, Inc., Plaintiff, Michael Moore, informed RegisterFly.com, Inc., again, that it was not authorized to place any more charges upon any credit card associated with his account. Michael Moore further stated that any charges placed upon any card would be unauthorized and would be charged back.

39.     From November 28, 2005 until January of 2006, RegisterFly.com, Inc. placed charges on the credit card of Plaintiff, Ronald P. Gentry. When Mr. Gentry became aware of these charges, he contacted Michael Moore. Michael Moore instructed Mr. Genty to charge back all such charges and, Mr. Gentry contacted his card company. His credit card company charged back said charges.

40.     On or about January 9, 2006, RegisterFly.com, Inc. and/or eNom, Inc. caused the Internet names that Michael Moore had registered with eNom, Inc. to be transferred to an

11

account owned and maintained by RegisterFly.com, Inc. On January 10, 2006, Michael Moore

accessed his account at RegisterFly.com, Inc. and found the following posted as to his account:

> *Your account has been placed into restricted mode by our RiskPrevention team. To remove the restriction you will need to do the following:*
>
> *Contact us at risk@registerflysupport.com for further details about why your account is in restricted mode, please Include your user id in all communications. If you are suspended due to non-payment, you will need to pay the past due balance and submit proof of payment  before your account is enabled.  Further information(If available) appears below:*
>
> *cbks*
>
> *$296.67+$100\*10*

41.     RegisterFly.com, Inc. demanded $1296.97 over the Internet and later over the telephone, using voice. RegisterFly.com, Inc. stated that these funds must be surrendered  and further stated that the Internet names would be transferred and/or returned to Michael Moore when these funds were surrendered.

42.     On or about January 20, 2006, Michael Moore and Ron Gentry used U. S. mail to send a registered letter to RegisterFly.com, Inc. with a certified check enclosed for the amount of funds that it had previously demanded, $1296.67.     On or about January 30, RegisterFly.com,Inc. received the aforementioned registered letter.  On or about January 31, 2006, RegisterFly.com, Inc. deposited this certified check into its bank account. This bank account was used and maintained by RegistearFly.com, Inc.

43.     In registering Internet names for Michael Moore, RegistarFly.com, Inc. was acting as a reseller for eNom, Inc. RegisterFly.com, Inc. did not actually register these domain names, but eNom, Inc. did. Michael Moore emailed and mailed registered letters through U.S.

12

Mail, certified, to both RegisterFly.com, Inc. and eNom, Inc.  In response to one or more of

these emails and/or letters, eNom, Inc. sent the following email to Michael Moore:

> *This issue needs to be dealt with between yourself and RegisterFly.eNom does not have the records necessary to verify either side of the issue. We cannot involve ourselves in third party billing disputes because of this. It should be pointed out that RegisterFly is an ICANN accredited domain name registrar. If you are having trouble dealing with RegisterFly, you can file a complaint with ICANN.*
>
> *Regards,*
> *eNom, Inc.*

44.    Plaintiff, Michael Moore, sent a number of emails and mailed registered letters

through the U. S. mail to numerous employees at ICANN.  In these emails and letters, Plaintiff,

Michael Moore, informed RegisterFly.com, Inc. that it  had unlawfully seized and/or transferred

Internet names and was extorting money from him for the return of those names.  In reply to one

or more of these emails or letters, ICANN sent the following email to Michael Moore:

*Dear Mr. Moore,*

> *I have been forwarded several copies of this inquiry that you have sent to numerous people at ICANN and will take this opportunity to respond.  Please understand that ICANN's role is limited.  ICANN is a non-profit corporation that has responsibility for Internet Protocol (IP) address space allocation, protocol identifier assignment, generic (gTLD) and country code (ccTLD) Top-Level Domain name system management, and root server system management functions to preserve the operational stability of the Internet.  ICANN does not have direct responsibility for the actions of resellers, but we do contract with registrars (through which resellers do business).  ICANN's authority with regard to registrars is limited to a contractual relationship governing the registration of domain names, but we do not oversee contractual disputes related to payment of registration fees.*
>
> *Based on the information you have provided, it does not appear that there has been any violation of ICANN policy that would qualify as a violation of the registrar contract with ICANN.  A copy of this contract can be found at http://www.icann.org/registrars/ra-agreement-17may01.htm.  Should you review this contract and find that there has been some violation that we have not found, please inform :us and we will gladly investigate.*

13

*While we are not suggesting that your concerns are unfounded, they just do not fit within our scope of authority. We have contacted the registrar to pass along your concerns and were informed that this was a financial or contractual matter between you and your reseller. As such, there is nothing for ICANN to do. You may wish to contact an attorney for legal advice or the appropriate law enforcement or consumer protection agency if you believe that illegal or inappropriate activity is taking place.*

*Regards,*

*Tim Cole*
*Chief Registrar Liaison*
*Internet Corporation for Assigned Names and Numbers*

45.    On February 27, 2006, RegisterFly.com, Inc. transferred 80 domain names back to Michael Moore, but the names were registered through eNom, Inc., RegisterFly.com, Inc. and eNom, Inc. failed and/or refused to return 27 domain names that Michael Moore had registered at RegisterFly.com, Inc., but which were actually registered at eNom, Inc.

46.    From January 9, 2006 through February 20, 2006, RegisterFly.com, Inc. had control and possession of the Internet names that Michael Moore had registered. During this time a number of these Internet names came due for renewal. Neither RegisterFly.com, Inc. or eNom, Inc. would allow Michael Moore to renew these Internet names and, both refused to return these Internet names.

47.    Michael Moore demanded the return of these Internet names, but RegisterFly.com, and eNom, Inc. asserted that the names had not been renewed. On March 21, 2006, eNom, Inc. notified Michael Moore that a number of Internet names that he registered through RegisterFly.com, Inc. as eNom, Inc.'s reseller had expired. In reply to emails and registered letters sent through U.S. mail by Michael Moore to eNom, Inc., eNom, Inc. sent the following statements by email to Michael Moore. The statement reads as follows:

14

*RegisterFly uses eNom's backend to facilitate their registry connection. As stated in a previous email, as far as the registry is concerned, the domain names are registered with eNom (RegisterFly is the storefront and eNom is the backend). Because of this we have the authority to allow you to renew your domains directly through us if you are unable to facilitate the renewal through RegisterFly.*

*The domain names that you have listed are all currently listed in the redemption grace period. What this means is that your registration for the names expired and the domains were deleted from eNom's active database. However, the names still reside with eNom at the registry level, thus our ability to redeem the expired registrations. The fee for redemption of an expired domain is $160, as noted in eNom's registration agreement. If you are unwilling to pay the redemption fee, the domain names will not be renewed and will eventually be deleted. It seems that you fail to grasp the concept that your registration of the domain names expired, therefore, they no longer belong to you.*

48.   Neither RegisterFly.com, Inc., eNom, Inc. nor ICANN deny that these names

were in the possession and control of RegisterFly.com, Inc., eNom, Inc. from January 9, 2006

through February 29, 2006. Nor do they deny that Plaintiff, Michael Moore, was prohibited

from renewing these names. RegisterFly.com, Inc.'s web site states the following as to expired

names and renewals and redemption time limits:

**RegisterFly.com allows a 30 day grace period after a name expires. During this 30 day grace period you can renew your domain. After the 30 day grace period expires your domain will move to the redemption period for 30 days prior to being dropped and made available again for registration. Once the domain is placed in redemption you CANNOT renew it via our interface.**

49.   Michael Moore sent a number of emails and registered letters to to eNom, Inc. as

to these Internet names, which were in the possession of eNom, Inc. On March 22, 2006, eNom,

Inc. sent the following message to Michael Moore in an email:

*Transaction records from RegisterFly are between you and them. Enom has no way to verify transactions that are not processed through our credit card processing (RegisterFly uses their own processing). We did not receive the renewal command and were not paid for the renewal of the domains. We require a clear answer as to if you wish to redeem these domain names or not. Please reply telling us yes, you would like to redeem the domains at $160 per domain, or no, you would like them to be deleted at the registry level.*

15

*The domain names are only redeemable up to 72 days after the listed expiration date (30 day eNom grace period + 42 day redemption grace period). We are trying to work with you in accordance with eNom and ICANN policy. All that we require is your cooperation. If you do wish to redeem the domains, sInc.e you are a chargeback risk at this point, we will require that you either sign our credit card authorization form, expressing your consent for the charge, or you may wire transfer the funds. Let us know how you would like to proceed.*

*Regards,*
*eNom, Inc.*

50.     From January 10, until February 20, RegisterFly.com, Inc., eNom, Inc. caused the Internet names registered by Michael Moore to be redirected. These Internet names had been directed to web sites located on Internet web servers located in Birmingham Alabama. This redirection caused Internet visitors to not visit Michael Moore's sites, but other web sites. As a result, the Plaintiffs were damaged.

51.     RegisterFly.com, Inc.     refuses to provide an accounting of the $1296.76 demanded on January 10, 2006, which it received on January 30, 2006 and deposited into its bank account and used by January 31, 2006. Michael Moore made many requests and demands for an accounting via email and by registered letters that were sent to RegisterFly.com, Inc. , eNom, Inc. and ICANN.

52.     In a number of emails and certified letters mailed to RegisterFly.com, Inc. and eNom, Inc., Michael Moore demanded the release and return of the Internet names that he had registered at eNom, Inc. through its reseller RegisterFly.com, Inc. However, 29 of these Internet names were never returned.

## COUNT ONE: MISREPRESENTATION OF MATERIAL FACTS

53.     Plaintiffs reallege, as if fully set forth, each and ever allegation contained in the preceding paragraphs and further allege that:

16

54.     Defendant RegisterFly.com, Inc. made material representations to the Plaintiffs that included statements that RegistrerFly.com, Inc. was an accredited ICANN registrar and by registering Internet names and paying a certain sum that Plaintiffs would receive certain rights, titles, licenses or interest in these Internet names.    Defendant RegisterFly.com, Inc. also represented to the Plaintiffs that the rights, titles or interest in these Internet names could be renewed by paying a certain sum.   Defendant ReigsterFly.com, Inc. further represented to the Plaintiffs that the rights, titles or interest in these Internet names could not be transferred. Additionally, Defendant RegisterFly.com, Inc.  represented to the Plaintiffs that after they had acquired the rights, titles or interest in these Internet names that it would abide by ICANN's rules, regulations, policies and procedures.

55.     The representations made by Registerfly.com, Inc. were false.

56.     Defendant Registerfly.com, Inc. intended the aforementioned representations to induce the Plaintiffs to act in reliance thereon by paying monies and registering Internet names with Registerfly.com.

57.     The representations were made either wilfully to deceive, recklessly without knowledge or by mistake and innocently.

58.     The Plaintiffs relied on these representations and paid to have 109 Internet names registered with RegisterFly.com.Inc.

59.     Such reliance by the Plaintiffs was reasonable and justified based on the knowledge available to Plaintiffs and the circumstances at the time.

60.     As a proximate result of the aforementioned misrepresentations the Plaintiffs suffered direct and consequential damages to include emotional distress and mental anguish.

17

**WHEREFORE**, Plaintiffs demand twenty-five million dollars ($25,000,000.00) in compensatory damages and punitive damages in order to punish defendants for their illegal and/or wrongful conduct and to discourage others from participating in the same or similar conduct.

## COUNT TWO: MISREPRESENTATION OF MATERIAL FACTS

61. Plaintiffs reallege, as if fully set forth, each and ever allegation contained in the preceding paragraphs and further allege that:

62. Defendants eNom, Inc. and ICANN Enterprises, Inc., made material representations to the Plaintiffs that included statements that by registering Internet names and paying a certain sum that Plaintiffs would receive certain rights, titles, licenses or interest in these Internet names. Defendants eNom, Inc. and ICANN Enterprises, Inc. also represented to the Plaintiffs that the rights, titles or interest in these Internet names could be renewed by paying a certain sum. Defendants eNom, Inc. and ICANN Enterprises, Inc. further represented to the Plaintiffs that the rights, titles or interest in these Internet names could not be transferred. Additionally, Defendants eNom, Inc. and ICANN Enterprises, Inc. represented to the Plaintiffs that after they had acquired the rights, titles or interest in these Internet names that it would abide by ICANN's rules, regulations, policies and procedures.

63. The representations made were false.

64. Defendants eNom, Inc. and ICANN Enterprises intended the aforementioned representations to induce the Plaintiffs to act in reliance thereon by paying monies and registering Internet names with Registerfly.com.

65. The representations were made either wilfully to deceive, recklessly without knowledge or by mistake and innocently.

18

66.    The Plaintiffs relied on these representations and paid to have 109 Internet names registered.

67.    Such reliance by the Plaintiffs was reasonable and justified based on the knowledge available to Plaintiffs and the circumstances at the time.

68.    As a proximate result of the aforementioned misrepresentations the Plaintiffs suffered direct and consequential damages to include emotional distress and mental anguish.

**WHEREFORE**, Plaintiffs demand twenty five million dollars ($25, 000,000.00) in compensatory damages and punitive damages in order to punish defendants for their illegal and/or wrongful conduct and to discourage others from participating in the same or similar conduct.

## RICO ALLEGATIONS, THE ICANN ENTERPRISE

69.    Based on the Plaintiffs' current knowledge, the following persons constitute a group of persons, corporations, partnership, association or other legal entity associated in fact that Plaintiffs refer to as the "ICANN Enterprise. The "ICANN Enterprise"includes the following:    Defendant ICANN Enterprises, Inc.; RegisterFly.com, Inc.; eNom, Inc. and VeriSign, Inc.

70.    The "ICANN Enterprise" is an ongoing organization that engages in and whose activities affect interstate commerce.

71.    The Defendants participate in and are members of the "ICANN Enterprise". However, Defendants also exist separate and distinct from the enterprise.

72.    In order to maintain monies owned by the Plaintiffs, the Defendants needed a system that allows them to control fees charged to Internet registrars to register, the ability to register names on the Internet, the ability to maintain Internet domain names and conceal the

manner in which it was done. The "ICANN Enterprise" provides Defendants with this system and ability to control. Furthermore, the Defendants' control and participation in said system is necessary for the successful operation of their scheme. The Defendants control and operate the "ICANN Enterprise as follows: by engaging in wire fraud; misrepresenting materials facts from Internet registrars as previously set forth above; unlawfully tying fees for administrative tasks to the regular service fee, by restraining competition and by unlawfully transferring Internet names contrary to Defendants own policies and procedures.

## THE PREDICATE ACTS

73.     § 1961(1) of RICO provides that "racketeering activity" includes any acts indictable under 18 U. S. C. 1341 (relating to mail fraud) and 18 U. S. C. 1343 (relating to wire fraud).

74.     As set forth below, Defendants have engaged in and continue to engage in conduct violating each of the aforementioned laws to effectuate their scheme.

75.     Additionally, in order to make their scheme more effective, each of the Defendants sought to aid and abet the other Defendants in violating the laws within the meaning of 18 U. S. C. 2. As a result, Defendants' conduct is also indictable under 18 U. S. C. 1341 and 1343 on an additional basis.

## COUNT THREE VIOLATIONS OF 18 U.S.C. 1341 AND 1343

76.     Plaintiffs reallege, as if fully set forth, each and every allegation contained in the preceding paragraphs and further allege that:

77.     For the purposes of executing and/or attempting to execute the aforementioned scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendants in violation of U.S.C, 1341 placed in post offices and/or in authorized repositories

20

matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier and received matter and things from the Postal Service or commercial interstate carrier to include, but not limited to the following: agreements, correspondence and statements.

78.    For the purpose of executing and/or attempting to execute the aforementioned scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendants in violation of 18 U.S.C. 1343 transmitted and received by wire matter and things which include, but is not limited to agreements, correspondence and statements.

79.    The matter and things sent by the Defendants via the Postal Service, commercial carrier, wire or other interstate electronic media include, but is not limited to the following: material containing false and fraudulent misrepresentations that by registering Internet names and paying a certain sum that Plaintiffs would receive certain rights, titles, licenses or interest in these Internet names.

80.    Other matter and things sent through or received from the Postal Service, commercial carrier or interstate wire transmission by the Defendants include information and communications in furtherance of or necessary to effectuate the scheme.

81.    The Defendants' misrepresentations, acts of concealment and failure to disclose were knowing and intentional and made for the purpose of deceiving the Plaintiffs for the purpose of obtaining the Plaintiffs's property for the Defendants' gain.

82.    The Defendants either knew or recklessly disregarded the fact that the misrepresentations and omissions described in the proceeding paragraphs above were material and, the Plaintiffs relied on these misrepresentations and omissions to his detriment.

21

83. As a result, the Defendants have obtained money and property belonging to the Plaintiffs. The Plaintiffs have been injured in their business or property by the Defendants' overt acts of mail and wire fraud and by their aiding and abetting each other's acts of mail and wire fraud.

## PATTERN OF RACKETEERING ACTIVITY

The Defendants have engaged in a "pattern of racketeering activity" as defined by 18 U. S. C. 1961(5) by committing and aiding and abetting in the commission of at least two acts of racketeering activity, i.e. Indictable violations of 18 U. S. C. 1341 and 1343 as described above, within the past ten years. In fact, in this case, the Defendants have committed or aided and abetted in the commission of numerous acts of racketeering activity. Each activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims.

84. The multiple acts of racketeering activity which Defendants committed and/or conspired to commit or aided and abetted in the commission of were related to each other and amount to and pose a threat to continued racketeering activity and, therefore, constitutes a "pattern of racketeering activity" as defined by 18 U.S.C. 1961(5).

## COUNT FOUR RICCO VIOLATIONS 1962(c) and 1962(d)

85. Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any person employed by or associated with any enterprise engaged in or the activities of which affect interstate or foreign commerce to conduct or participate directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity . . "

22

86. Through patters of racketeering activities outlined above, the Defendants have also conducted and participated in the affairs of the thousands of Internet domain registrars.

**1962(d)**

87. Section 1962(d) of RICO makes it unlawful "for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section."

88. Defendants' conspiracy to secure money from the Plaintiffs and others for its own use through the fraudulent scheme described above violates 18 U.S.C. 1962(d).

89. Each of the Defendants agreed to participate, directly or indirectly, in the conduct of the affairs of the "ICANN Enterprise" through a pattern of racketeering activity comprised of numerous acts of mail fraud and wire fraud and each Defendant so participated in violation of 18 U. S. C. 1962(c).

## COUNT FIVE EXCLUSIVE DEALING AND OTHER EXCLUSIONARY AGREEMENT IN VIOLATION OF SECTION 1 OF THE SHERMAN ACT.

90. Plaintiffs reallege, as if fully set forth, each and ever allegation contained in the preceding paragraphs and further allege that:

91. Defendant ICANN Enterprises, Inc.'s agreements with each registry and the other Defendants for each gTLD unreasonably restricts competition in violation of Section 1 of the Sherman Act.

92. These agreements unreasonably restrain trade and competition in the markets for entry onto the Legacy A root server as well as the secondary legacy roots.

93. These agreements also restrict access to the Defendants' competitors, the alternate roots for entry into the market for the Legacy A root server as well as the secondary legacy roots.

23

94.     The purpose and affect of these agreements are to restrain trade and competition in the market for entry onto the Legacy A root as well as the market for entry on the secondary legacy roots. These agreements violate Section 1 of the Sherman Act 15 U.S.C. 1.

## COUNT SIX UNLAWFUL TYING IN VIOLATION OF SECTION ONE OF THE SHERMAN ACT

95.     Plaintiffs reallege, as if fully set forth, each and every allegation contained in the preceding paragraphs and further allege that:

96.     When a registrant registers a domain name, the registrant is required to pay a fee for the regular service.

97.     The registrant is then required to pay an additional fee for certain administrative tasks that are outside the scope of the regular service.

98.     The Defendants have tied the fee for the administrative task to fees for the regular service in violation of Section 1 of the Sherman Act, 15 U. S. C. 1.

99.     The purpose and effect of this tying is to prevent competition among the registries and registrars. The tying also restrains competition in the market for entry onto the Legacy A root as well as the market for entry on the secondary legacy roots.

**WHEREFORE**, Plaintiffs pray for judgment, joint and several, be entered against Defendants in an amount to be determined by a jury, and for further exemplary damages to the extent permitted by law. Plaintiffs also demand the costs of this action, and interest on the judgment as allowed by law.

## COUNT SEVEN- SUPPRESSION

100.    Plaintiffs reallege, as if fully set forth, each and every allegation contained in the preceding paragraphs, and further allege that:

101. Defendants willfully, wantonly, fraudulently or recklessly suppressed material facts from the Plaintiffs, including, but not limited to the following:

a. Defendants could transfer the Internet domain names registered by the Plaintiffs;

b. Defendants were going transfer the Internet domain names registered by the Plaintiffs;

c. Defendants were not going to abide by their own rules, regulations, policies procedures;

d. Defendants were going to place fraudulent charges on Plaintiffs' credit cards;

e. Defendants would charge them additional fees for administrative tasks in addition to their regular service charge and

f. Defendants would take control of the Plaintiffs' domain names and

g. Defendants would refuse to renew the Plaintiffs' domain names.

102. Defendants suppressed and concealed this information from Plaintiffs.

103. Under the circumstances, Defendants had a duty to disclose to Plaintiffs the material facts set forth above.

104. Furthermore, because the Defendants had superior knowledge of the facts, and had a means of knowledge and expertise not shared by Plaintiffs, the Defendants had a duty to disclose to Plaintiffs the material facts set forth above.

105. Defendants suppressed and concealed material facts from Plaintiffs in order to induce Plaintiffs to purchase domain names. Without knowledge of the foregoing material facts, Plaintiffs did, in fact, act to their injury by purchasing domain names.

106.    Plaintiffs have been damaged as a direct and proximate result of the misrepresentations of Defendants.

107.    The actions of Defendants constitute suppression of material facts pursuant to Alabama Code § 6-5-102 (1975).

## COUNT EIGHT - BREACH OF CONTRACT

108.    Plaintiffs reallege and adopt by reference the allegations in the preceding paragraphs in this Complaint as it fully set out herein below and further allege that:

109.    Plaintiffs had express contracts with Defendants where they registered domain names through and/or with the Defendants.  Plaintiffs allege they have fully performed their obligation under the contracts.  Plaintiffs allege that Defendants breached the contracts.

110.    As a direct and proximate result of the breaches of contracts by Defendants, Plaintiffs suffered damages.

## COUNT NINE - THIRD PARTY BENEFICIARY

111.    Plaintiffs reallege, as if fully set forth, each and every allegation contained in the preceding paragraphs, and further allege that:

112.    Plaintiffs allege that and Defendants eNom, Inc.; ICANN Enterprises, Inc. and RegisterFly.com, Inc entered into various contracts.  Plaintiffs allege that Plaintiffs were the intended beneficiary of those contracts.

113.    All Defendants knew that Plaintiffs would benefit from their contracts and that Plaintiffs could be harmed by any breach of the contracts by any Defendant.

114.    Plaintiffs further allege the Defendants breached the various contracts and, therefore, Plaintiffs are entitled to damages as third-party beneficiaries because Plaintiffs suffered damages as a result of the breach.

26

115.   As a direct and proximate result of the actions of Defendants, which combined

and concurred to form the basis of this suit, Plaintiffs have suffered damages.

Dated:  _____, 2007.

Respectfully submitted:

T. Blake Liveoak, LIV014
Counsel for the Plaintiffs

Of Counsel:

Collins, Liveoak & Boyles, P.C.
2021 Morris Avenue, Suite 200
Birmingham, Alabama 35203
Phone:(205) 324-1834
Fax:    (205) 324-1846

27

## JURY DEMAND

Plaintiffs demand a trial by struck jury on all counts so triable.

**SERVED VIA CERTIFIED MAIL:**

**ICANN Enterprises, Inc.**
**c/o Dennis McKinnie**
**278 Alamitos Avenue, Suite #17**
**Long Beach, California 90802**

**ENOM, Inc.**
**c/o Martin Garthwaite**
**2002 156th Avenue NE, Suite 300**
**Unigard Park, McKinley Building**
**Bellevue, Washington 98007**

**RegisterFly.com, Inc.**
**623 Eagel Roack Avenue**
**Suite #7**
**West Orange, NJ 07052**